UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LaToya Crawford,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Equifax Information Services, LLC,<br><br>　　　　　Defendant. | **Case No.: 2:25-cv-1715**<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>1. FCRA, 15 U.S.C. § 1681 *et seq.* |

Plaintiff LaToya Crawford ("Plaintiff"), by and through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Equifax Information Services, LLC ("Equifax" or "Defendant").

## INTRODUCTION

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendant. Plaintiff contends that the Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3. Venue in the Eastern District of Wisconsin is proper pursuant to 28 U.S.C. § 1391 because, Plaintiff resides here, Defendant regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

4. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5. Plaintiff is a natural person who resides in the city of Milwaukee, County of Milwaukee, Wisconsin.

6. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax may be served with process upon the Illinois Corporation Service Company, its registered agent for process service at 33 East Main Street, Suite 610, Madison, Wisconsin.

8. During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Wisconsin and conducted business in the State of Wisconsin on a routine and systematic basis.

9. Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10. During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11. Any violations by the Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL BACKGROUND

### *The Role of Credit Reporting Agencies*

12. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

13. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15. Defendant is one the major consumer reporting agencies in the United States, who regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

16. The FCRA is intended to ensure CRAs exercise their weighty responsibilities with fairness, impartiality, and respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

17. Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

18. Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant, and other information must be independently gathered by Defendant, or acquired from third party providers, vendors or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

19. Defendant also obtains information from other CRAs, who commonly share information.

20. Defendant regularly seeks out and procures consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports that Defendant sell to third parties for a profit.

21. The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

22. Defendant's unreasonable policies, procedures, and algorithms consistently fail to report consumer information accurately in their credit reports, as required by 15 U.S.C. § 1681e(b).

23. Defendant knows the information they report about consumers' bankruptcies is often inconsistent with public records, furnished and reported information, and information contained in their own files.

24. The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

25. The information Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

26. FICO Scores are calculated using information contained in Defendant' consumer reports.

27. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

28. FICO Scores factors the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

5

Case 2:25-cv-01715-LA    Filed 11/04/25    Page 5 of 15    Document 1

29. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent Account exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

30. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA indicates that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

31. Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendant in consumer reports.

32. DTI compares the total amount a consumer owes to the total amount a consumer earns.

33. Defendant regularly provides information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendant.

34. A consumer's income, however, is not included in their consumer report; only the amount of debt is included.

35. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

36. Accordingly, a consumer is negatively affected when a CRA reports that a consumer owes a debt with a balance on it when that debt was discharged in a bankruptcy.

37. Defendant is well aware that the effect of a Discharge Order in a Chapter 7


Bankruptcy is all statutorily dischargeable debts are discharged.

38. However, Defendant regularly report inaccurate information about consumers' debts after they receive a Discharge Order.

39. Rather than follow reasonable procedures to assure maximum possible accuracy, as is required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts and post-bankruptcy debts based on incomplete or knowingly inaccurate information.

40. Defendant regularly publishes consumer information that conflicts with the information provided by data furnishers, included in Defendant' credit files, contained in public records that Defendant regularly access, and/or sourced through Defendant' independent and voluntary efforts.

41. Such inaccuracies are made in violation of the FCRA at 15 U.S.C. § 1681e(b).

42. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for their inaccurate consumer reporting following a Chapter 7 Bankruptcy Discharge, including failure to accurately report which debts were discharged.

43. Therefore, Defendant is on continued notice of their inadequate bankruptcy reporting procedures, which often produce inaccurate public record information, balances, and account and payment statuses.

*Plaintiff's Chapter 7 Bankruptcy*

45. On April 12, 2019, Plaintiff filed a Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Eastern District of Wisconsin, petition no. 2:19-bk-23226.

46. Plaintiff received an Order of Discharge for her bankruptcy on July 23, 2019.

47. All accounts that qualified under Chapter 7 bankruptcy were included in the bankruptcy discharge, which included Plaintiff's Milwaukee Metropolitan Credit Union account that was opened on March 7, 2019.

*The Inaccuracies on Defendant' Consumer Reports*

50. On or around July 16, 2025, Plaintiff obtained copies of her credit report.

51. Equifax continues to report a pre-petition Milwaukee Metropolitan Credit Union Account with an outstanding balance in the amount of $1,010 hereinafter be referred to as "Milwaukee Metropolitan" or "Account"

52. Defendant failed to report the Account as "discharged in Bankruptcy.

53. Defendant clearly did not do adequate due diligence, as Plaintiff's Bankruptcy was filed and readily available in public records to Defendant.

54. Furthermore, the Defendant reported other accounts as discharged in bankruptcy, therefore Defendant had actual notice of the bankruptcy filing.

55. Defendant misrepresented the Account by stating it was a derogatory account with open outstanding balance when in reality the Account was discharged in Plaintiff's Chapter 7 Bankruptcy.

56. The credit report the Plaintiff reviewed was created after Plaintiff's Chapter 7 Bankruptcy was filed, and after Plaintiff received an Order of Discharge.

57. The name, social security number, and address in Plaintiff's Chapter 7 petition match the information listed on the consumer reports prepared by the Defendant.

58. In addition, public records reflecting Plaintiff's bankruptcy filing and subsequent discharge are readily available to Defendant through multiple sources such as PACER, but Defendant failed to review those sources or knowingly rejected them.

59. Defendant prepared one or more consumer reports concerning Plaintiff after Plaintiff received an Order of Discharge from his Chapter 7 Bankruptcy.

60. However, Defendant failed to accurately report Plaintiff's Chapter 7 Bankruptcy and list the Account in question as included in the discharge.

61. Upon information and belief, Defendant received notice of Plaintiff's bankruptcy discharge through their independent collection of Plaintiff's consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiff's consumer reports.

62. Defendant also obtains information from other CRAs (who commonly share Information).

63. Defendant is aware that CRAs are generally required to report when a person filed for bankruptcy and to list all accounts that were actually discharged as included and discharged in bankruptcy.

64. Defendant should have reported the bankruptcy and the subsequent discharge properly.

65. Instead, Defendant incorrectly reported the Account with an open balance when it was actually included and discharged in Plaintiff's Chapter 7 Bankruptcy.

66. Defendant inaccurately reported the Account and failed to properly consider the Plaintiff's Chapter 7 Bankruptcy and the effect it had on the relevant Account.

67. In any event, Defendant knew or had reason to know that the reported information was contradicted by notices received from third parties as well as from the bankruptcy proceedings themselves.

68. If not patently inaccurate, Defendant' inaccurate reporting of the Account is materially misleading.

### *Plaintiff's Damages*

66. As a preliminary matter, Defendant failed to report Plaintiff's bankruptcy and subsequent discharge, as well as properly reporting the Account as discharged in bankruptcy.

67. Plaintiff's creditworthiness is significantly affected and lowered because Defendant reported the Account as debt that with an open balance that Plaintiff is still obligated to pay.

68. As an individual attempting to improve her credit score for future credit transactions, the Plaintiff was harmed because of Defendant' inaccurate reporting of the Account.

69. Defendant's consumer report failed to report Plaintiff's Chapter 7 Bankruptcy appropriately, which caused severe damage to Plaintiff's creditworthiness and her financial wellbeing.

70. Plaintiff's consumer credit file and consumer reports were reviewed by numerous entities after the discharge of his bankruptcy; those entities viewed the erroneous information published by the Defendant.

71. As a direct result of Defendant' inaccurate reporting, Plaintiff suffered damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

72. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

## COUNT I

### *VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)*

74. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

75. Pursuant to 15 U.S.C. § 1681e(b), the FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information.

76. However, Defendant failed to report Plaintiff's bankruptcy accurately, instead reporting the Account as open with outstanding a balance when it was actually included and discharged in Plaintiff's Chapter 7 Bankruptcy.

77. Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy Account after a consumer receives a Discharge Order.

78. Defendant received notice of Plaintiff's bankruptcy and discharge through public records, independent collection of consumer information directly obtained by Defendant through sources of consumer information such as Lexis-Nexis, Defendant' own files, and information provided by data furnishers, yet Defendant misapplied that information.

79. Defendant' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who file Chapter 7 Bankruptcies.

80. Defendant' unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy.

81. Defendant' unreasonable policies, procedures and/or algorithms consistently fail to identify and update accounts that were actually included in a bankruptcy, as required by 15 U.S.C. § 1681e(b).

82. Defendant know the information that they report about consumers' bankruptcies is often inconsistent with public records and their own files.

83. Defendant' failure to maintain and employ reasonable procedures to assure the information they report is accurate is particularly egregious because Defendant regularly and voluntarily search for consumer bankruptcy information to include in credit files.

84. Defendant knew or should have known that they are obligated by the FCRA, to maintain and employ reasonable procedures to ensure they report maximally accurate consumer credit information.

85. Defendant knew or should have known that they are obligated by the FCRA to update their consumer reports and the relevant tradelines.

86. Defendant knew or should have known that the effect of a Discharge Order in Chapter 7 Bankruptcy is to discharge the statutorily dischargeable debts.

87. CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving Defendant.

88. Therefore, Defendant had ample notice of their obligations under the FCRA and their continued use of unreasonable procedures.

89. If Defendant contends that they did not have sufficient notice, Defendant must justify their own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including when consumers file Chapter 7 bankruptcies.

90. Defendant regularly conduct voluntary public records searches with the intention of including bankruptcy information on the consumer reports they sell to other parties for a profit.

91. When Defendant received notice of Plaintiff's bankruptcy information, they had an obligation to ensure that they reported Plaintiff's discharge and its effects with maximal accuracy, and to report an account as discharged when it was discharged in bankruptcy.

92. Unfortunately, Defendant willfully and consciously breached their duties as CRAs and deprived Plaintiff of his right to a fair and accurate consumer report.

93. Despite knowledge of their legal obligations, Defendant violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer report.

94. Defendant knows that a debt that was discharged in a bankruptcy should be reported as discharged on credit reports.

95. Defendant knew or should have known the information they reported about the Account was inaccurate.

96. Defendant violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known that the information Defendant are reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

97. Defendant' violations of 15 U.S.C. § 1681e(b) were willful.

98. Alternatively, Defendant' violations of 15 U.S.C. § 1681e(b) were negligent.

99. Defendant' inaccurate reporting damaged Plaintiff's creditworthiness.

100. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Defendant for failing to report the Account accurately, since it was an account that was discharged in Plaintiff's bankruptcy.

101. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

102. Defendant is a direct and proximate cause of Plaintiff's damages.

103. Defendant's actions is a substantial factor in Plaintiff's damages.

104. Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant Equifax Information Services, LLC. for the following:

(a) Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681e(b);

(b) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(e) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and

(f)   Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Dated: August 28, 2025

Respectfully submitted,

*/s/ Yaakov Saks*
Stein Saks, PLLC
By: Yaakov Saks, Esq.
One University Plaza, Suite 620
Hackensack, NJ 07601
Phone: 201-282-6500
Fax: 201-282-6501
ysaks@steinsakslegal.com
*Counsel for Plaintiff*